UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EDWARD SILIPENA, et al., | : | |
| Plaintiffs, | : | **Hon. Joseph H. Rodriguez** |
| v. | : | Civil Action No. 16-711 |
| AMERICAN PULVERIZER CO., et. al., | : | |
| Defendants. | : | **OPINION** |

This matter comes before the Court on Motion of Defendant American Pulverizer and Hustler Conveyor Company ("Defendants") to Dismiss [Dkt. No. 13] Counts I, II, V, and VI of the Complaint and to Strike Plaintiff's claim for Punitive Damages and on Defendant Pinnacle Engineering Inc.'s ("Pinnacle") Motion to Dismiss for failure to provide an Affidavit of Merit [Dkt. No. 44]. The Court has considered the written submissions of the parties and the arguments advanced at the hearing on November 7, 2016, which relate to Pulverizer's motion. For the reasons stated on the record that day and those that follow, Defendant Pulverizer's motion is granted in part and Defendant Pinnacle's motion is denied.

In relevant terms, the Complaint alleges that Plaintiffs purchased a machine from Defendants for the intended use of shredding and sorting automobile parts. By all accounts the "shredder" is a massive machine that dismantles old cars and sorts the various scrap metals. Shortly after installation of the machine, it malfunctioned and a fire ensued. Compl. ¶¶ 63, 64, 69. The fire disabled the machine and Plaintiffs allege, *inter alia*, loss of profitability, revenue, and other assets. Id. at ¶ 77. The Counts relevant to this motion are as follows: Count I Strict Liability, Count II Negligence,

1

Count V Breach of Implied Merchantability, and Count VI Fraudulent Concealment. The Complaint also seeks Punitive Damages. Defendants move to dismiss pursuant to Fed. R. Civ. P. 12 (b) (6).

Pinnacle moves to dismiss on the ground that Plaintiffs failed to supply an Affidavit of Merit as required by N.J.S.A. §2A-53A-2. Plaintiffs' claims against Pinnacle relate to Pinnacle's sale of defective equipment and/or products and Pinnacle's negligent assistance in the installation of the equipment. Pinnacle argues that Plaintiffs' assertion of claims of negligence and design and manufacturing defects, and breach of services rendered by licensed engineering professionals implicates the Affidavit of Merit Rule. In other words, because Plaintiffs allege that Pinnacle deviated from the acceptable standard of care, Pinnacle asserts that the submission of an Affidavit of Merit is required before Plaintiffs can proceed with their claims. Plaintiffs have not submitted an Affidavit of Merit in support if the claims against Pinnacle.
The Court will address the issues in turn.

### I. **Standard of Review- Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration. See U.S. Express Lines, Ltd., 281 F.3d at 388; Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434,

446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[1] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). Accord Iqbal, 556 U.S. at 678-80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

---

[1] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Id.

3

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555 (internal citations omitted).  See also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 556 (internal citations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile."  Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 174 (3d Cir. 2010) (internal citation and quotation omitted; emphasis added).

## II. Discussion

As a preliminary matter, in briefing and during oral argument, Plaintiffs concede the dismissal of the claim for punitive damages and the Court will dismiss the claim with prejudice.[2]

---

[2] Plaintiffs asked the court to dismiss without prejudice, but offer no authority in support of this request. In addition, Plaintiffs seek discovery to bolster and further define the contours of this claim.  That request is denied.

Like the majority of the Complaint, Plaintiffs' claim of fraudulent concealment is drafted in general terms, without identifying the specific parties at issue: there are six Plaintiffs and six Defendants named in the Complaint. The Complaint is replete with general references to "Plaintiffs" and "Defendants" without any information as to the nature of the relationship between and or among the parties and/or attribution of the alleged conduct or inaction. This fact alone implicates Twombly's mandate, which requries that, in the absence of detail, a plaintiff provide "more than labels and conclusions, and a formulaic recitation of a cause of action's elements[.]" Twombly, 550 U.S. at 555.

More importantly, the Count VI fails to meet the pleading standards set forth in Rule 9(b) of the Federal Rules of Civil Procedure, which requires particularized pleading for claims of fraud. Rule 9(b)'s heightened pleading standard requires that the details of the alleged "circumstances" of the fraud be plead with specificity sufficient to "place defendants on notice of the precise misconduct with which they are charged." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984). To that end, "[a]lthough the rule states that [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally, and does not require the plaintiff to plead every material detail of the fraud, the plaintiff must use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Argabright v. Rheem Mfg. Co., 201 F. Supp. 3d 578, 590–91 (D.N.J. 2016) (quoting In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002) (internal quotations and citations omitted)). Plaintiffs fail to meet this standard.

Here, Plaintiffs' claim of fraudulent concealment as plead in Count VI states in general terms that Defendants "intentionally, willfully, and maliciously" concealed

material defects from the Plaintiffs.  See Compl. ¶¶ 130-131.  Without identifying the specific parties at issue or the nature of the defects, the Complaint paints the conduct of all of the Defendants with a broad brush and lacks any detail sufficient to satisfy even the relaxed Rule 9(b) pleading standards.  See In re Exxon Mobil Corp. Sec. Litig., 387 F.Supp.2d 407, 427 (D.N.J. 2005) ("In order to receive the benefit of the relaxed standard, at the very least plaintiffs must allege that the necessary information lies within the defendants' control.")  Plaintiffs' allegation that "Defendants, through their experience, were in a position of superiority to Plaintiffs" and had knowledge that the "System: (a) was known to produce combustible output material, (b) did not have a production capacity if eighty (80) tons per hour, and (c) otherwise was not as warranted and represented by Defendants" lacks the requisite specificity.

Plaintiffs' generalized claim of fraudulent concealment fails to account for the different roles Defendants Pulverizer and Hustler each played in the manufacturing and design of the machine and/or the fact that Pulverizer is a party to a contract with two of the plaintiffs. In addition, the vague and unattributed allegation of superior knowledge and experience of all of the Defendants fails to establish fraudulent concealment.  As a result, Plaintiffs' lack of specificity as to which Defendants the alleged actions, or inactions, are attributable is fatal to this claim.[3]  Defendants' motion is granted as to Count VI.

Finally, Defendants argue that Plaintiffs' causes of action impermissibly sound in both tort and contract as to all Defendants and that Plaintiffs' common law tort claims are subsumed by New Jersey's Product's Liability Act ("PLA"), N.J.S.A. 2A:58C-2, and

---

[3] Plaintiffs ask for discovery to ferret out the facts of this claim.  Based on the insufficient allegation of fraudulent concealment, the Court will not permit discovery on this claims.

should be dismissed.  In Count I, Plaintiff alleges a claim of strict products liability for defective design and manufacturing and failure to warn, without any reference to the PLA.  Count II alleges negligence while Count III, which is not at issue in this motion, alleges that Defendant Pulverizer was a party to a contract with Plaintiffs; Count III does not delineate which of the six Plaintiffs are parties to the contract, but during oral argument counsel explained that Joseph Silipena and American Auto Salvage are the only plaintiffs that are parties to the contract.[4] Compl. ¶97.  Count III, without making a distinction as to the contracted parties, is drafted in a manner that conflates products liability with failure to perform under the contract in that it alleges that the Defendants failed to "provide and install a properly functioning" machine, support, management, and failed to provide" proper fire suppression in the overall design, layout and specification of the System." Id. at ¶101. Count V alleges a breach of merchantability claim.  Defendants argue that the causes of action plead in Counts I, II, V, and VI are subsumed the PLA and that such claims are not independently cognizable.

> The PLA provides:
>
> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: (a.) deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or (b.) failed to contain adequate warnings or instructions, or (c.) was designed in a defective manner.

N.J. Stat. Ann. § 2A:58C–2.  The term "product liability action" means any claim or action brought by a claimant for harm caused by a product, irrespective of the theory

---

[4] In addition, counsel agreed that Defendant Hustler is not a party to the contract and that parties to the contract cannot recover in tort; their remedies lie in contract. The Complaint, as drafted, does not make this distinction.

underlying the claim, except actions for harm caused by breach of an express warranty." N.J.S.A. 2A:58C-1b (3); In re Lead Paint Litigation, 191 N.J. 405, 924 A.2d 484, 503 (2007) (noting that "the PLA is both expansive and inclusive, encompassing virtually all possible causes of action in relating to harms caused by consumer or other products"). A plaintiff may assert a strict liability cause of action against a product manufacturer based on an unsafe design defect, manufacturing defect, or failure to warn theory of liability.

The New Jersey Legislature enacted the PLA to establish clear rules with respect to certain matters relating to actions for damages for harm caused by products. N.J. Stat. Ann. § 2A:58C–1. Therefore, if a claim falls within the scope of the PLA, the sole method to prosecute the claim is under the Act. Green v. Gen. Motors Corp., 310 N.J. Super. 507, 709 A.2d 205, 209 (N.J. Super. Ct. App. Div. 1998) ("Under the [PLA] ... the causes of action for negligence, strict liability and implied warranty have been consolidated into a single product liability cause of action, the essence of which is strict liability.")  "To determine whether the PLA subsumes a particular claim, courts examine the essential nature of the claim presented and decide whether the claim would traditionally be considered a products claim." Rodnite v. Hovnanian Enters., Inc., No. 08–3787, 2010 WL 3079576, at *3 (D.N.J. Aug. 5, 2010). This is not to say that the PLA subsumes all causes of action involving a "harm" caused by a "product." New Hope Pipe Liners, LLC v. Composites One, LCC, No. 09–3222, 2009 WL 4282644, at *2 (D.N.J. Nov. 30, 2009). A negligence claim predicating liability on a breach of duty arising independent of the manufacturer's duty to provide a non-defective product would not be considered a product liability action even if the harm was caused by the product. Likewise, a claim sounding in breach of an express warranty is excluded from the ambit

of the PLA, as this cause of action sounds in misrepresentation rather than product liability.

New Jersey courts have repeatedly held that claims of negligent manufacture and breach of implied warranty are no longer viable as separate causes of action for harm caused by a product. See, e.g., Port Auth. of N.Y. & N.J. v. Arcadian Corp., 189 F.3d 305, 313 (3d Cir. 1999) ("Under New Jersey law negligence is no longer viable as a separate claim for harm caused by a product."); Brown ex rel. Estate of Brown v. Philip Morris Inc., 228 F.Supp.2d 506, 516 (D.N.J. 2002) ("Because the [PLA] generally subsumes common-law product liability claims, the Third Circuit, the New Jersey District Court, and New Jersey State courts consistently have dismissed product liability claims based on common-law theories when those theories allege harm caused by a product.… In light of the [PLA] and that uniform decisional law interpreting that statutory provision, the Court determines that the [PLA] clearly subsumes plaintiff's common-law claims …"); Green, 709 A.2d at 209 ("Under the [PLA] … the causes of action for negligence, strict liability and implied warranty have been consolidated into a single product liability cause of action, the essence of which is strict liability."); Tirrell v. Navistar Intern., Inc., 248 N.J. Super. 390, 591 A.2d 643, 647 (N.J. Super. Ct. App. Div. 1991) (noting that "common-law actions for negligence or breach of warranty are subsumed within the new statutory cause of action").

During oral argument, Plaintiffs attempted to cure some of the confusion caused by the failure to parse out the actions or each party and argued, that some of the claims may not be subsumed by the PLA. At this stage of the litigation, Plaintiffs can continue to pursue claims under theories of both products liability and negligence and will be granted leave to amend Counts I, II and V accordingly. See Ramos v. Silent Hoist and

Crane Co., 256 N.J.Super. 467, 607 A.2d 667 (N.J. Super. Ct. App. Div. 1992) (permitting both claims to proceed); see also Worrell v. Elliott & Frantz, 799 F. Supp. 2d 343, 351–52 (D.N.J. 2011). The Court cautions however that to the extent Plaintiffs allege damage to the product itself, the economic loss doctrine proscribes recovery and such a claim is not independently cognizable under the PLA. Ford Motor Credit Company, LLC v. Mendola, 427 N.J.Super. 226, 48 A.3d 366, 374 (2012) ("The Product Liability Act and common law tort actions do not apply to damage caused to the product itself, or to consequential but purely economic losses caused to the consumer because of a defective product."

In Dean v. Barrett Homes, Inc., relied upon by Defendants, the New Jersey Supreme Court explained the purpose of the economic loss doctrine and its impact on the PLA:

> As comprehensive as the Products Liability Act is and appears to be, its essential focus is creating a cause of action for harm caused by defective products. The Act's definition of harm so as to exclude damage a defective product does to itself is not merely the Legislature's embrace of the economic loss rule, but a recognition that the Act's goal is to serve as a vehicle for tort recoveries. Simply put, the Act is not concerned with providing a consumer with a remedy for a defective product per se; it is concerned with providing a remedy for the harm or the damage that a defective product causes to people or to property.

Dean v. Barrett Homes, Inc., 204 N.J. 286, 8 A.3d 766, 777 (2010) (The NJPLA was not "designed to transform a contract-like claim, that is a claim that the product itself in some fashion fails to operate as it should, into a tort claim"); see also Kuzian v. Electrolux Home Prod., Inc., 937 F. Supp. 2d 599, 608 (D.N.J. 2013). Because Plaintiffs' Complaint fails to parse out the actions and/or relationships of each defendant to each plaintiff, the Court cannot discern whether the all of Plaintiffs intended tort claims are

10

subsumed by the PLA.  The Court agrees with Plaintiffs that, although not expressly stated in Count I, this claim tracks the language of the PLA and asserts claims under that statute.  To the extent, Defendants' Motion to dismiss on the ground that Plaintiffs fail to plead claims under the PLA is denied.  However, Plaintiffs claims against Pulverizer in Count I are not cognizable in light of the contract.   Plaintiffs are given leave to amend Counts I, II, and V only to make clear the allegations with respect to the parties consistent with this Opinion.  See Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 174 (3d Cir. 2010) ("[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile.") (internal citation and quotation omitted).

Defendant Pinnacle moves to dismiss the complaint with prejudice for failure to provide an Affidavit of Merit, pursuant to N.J.S.A. 2A:53A-27, which provides:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

N.J.S.A. 2A:53A-27 (2004). According to N.J.S.A. 2A:53A-29, "[i]f the plaintiff fails to provide an affidavit or a statement in lieu thereof… it shall be deemed a failure to state a cause of action." N.J.S.A. 2A:53A-29 (1995); see also Cornblatt v. Barow, 153 N.J. 218, 242 (1998) (stating that dismissal is to be with prejudice subject to certain

11

exceptions). To determine whether this statute applies to a particular claim, the Court considers the following elements:

> (1) whether the action is for "damages for personal injuries, wrongful death or property damage" (nature of injury); (2) whether the action is for "malpractice or negligence" (cause of action); and (3) whether the "care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint [ ] fell outside acceptable professional or occupational standards or treatment practices" (standard of care).

Couri v. Gardner, 173 N.J. 328, 334 (2002) (quoting N.J.S.A. 2A:53A-27).

Defendant Pinnacle is an engineering firm. Pinnacle states that because the claims against it arise out of strict product liability for design and manufacturing defects and improper installation, Plaintiffs implicate Pinnacle's work as licensed professionals, which necessitates an Affidavit of Merit. The Court disagrees.

Plaintiffs' claims call into question Pinnacle's expertise, but does not allege engineering malpractice. Complaint ¶¶ 52-53. Plaintiffs allege that Pinnacle sold and negligently installed defective products. Id. These allegations do not implicate a standard of care so as to come under the auspices of the statute. See Borough of Berlin v. Remington & Vernick Engineers, 337 N.J. Super. 590, 595 (App. Div. 2001). In Borough of Berlin, the New Jersey Appellate Division considered similar activity by an engineering firm and held that the firm does not qualify as a "licensed person" under the statute. Borough of Berlin, 337 N.J. Super. at 595. Because engineering firms are statutorily precluded from being licensed, no Affidavit of Merit requirement attaches to claims against such entities in circumstances where, as here, no licensed professionals are being sued and the firm is alleged to have committed conduct ancillary to its professional obligations as licensed engineers. As a result, because Pinnacle is alleged to

12

have sold a defective product and negligently installed a defective product, an Affidavit of Merit is not required and Pinnacle's motion is denied.


Dated: March 27, 2017

                                                s/Joseph H. Rodriguez
                                                Hon. Joseph H. Rodriguez,
                                                UNITED STATES DISTRICT JUDGE