UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EDWARD SILIPENA, et al., | : | Hon. Joseph H. Rodriguez |
| Plaintiffs, | : | Civil Action No. 16-711 |
| v. | : | OPINION & ORDER |
| | : | |
| AMERICAN PULVERIZER CO., et al., | : | |
| Defendants. | : | |
| | : | |

Presently before the Court are two separate motions by the Plaintiffs seeking default judgment and other sanctions against Defendant Cooper [Dkt. No. 308]. In general terms, this matter arises from two catastrophic fires that Plaintiffs allege caused approximately $50 million in damages and resulted in the total loss of their business in Millville, New Jersey. There is no dispute that discovery in this matter has been arduous, has created delay, has necessitated the reopening of discovery, and has caused additional briefing. This is the second time Plaintiffs have sought sanctions related to the Defendants piecemeal production of discovery. Plaintiffs accuse the Defendants of purposeful withholding of evidence for the purpose of frustrating Plaintiffs' prosecution of their claims.

Plaintiffs seek default judgment and a myriad of sanctions in the alternative, including attorney's fees and costs associated with pursuing full discovery disclosures. The filings are vast and recount in detail the need for recall depositions. The Plaintiffs' first motion for sanctions resulted in the reopening of discovery and the Court ordered that Defendants bear the expenses associated with Plaintiffs efforts to re-depose certain individuals. Plaintiffs' present motion addresses the additional undisclosed discovery

1

.

that became evident during the recall depositions of certain individuals. For this reason, they renewed the motion for sanctions. Defendants acknowledge the shortcomings, but claim the nondisclosures are the result of inadvertence and maintain that all newly discovered evidence has been produced as quickly as possible.

As this Opinion is written primarily for the parties, the Court will not restate herein the robust factual background of this case. Plaintiffs lay out in great detail the history of difficulties in the discovery exchange in this matter. This motion against Cooper relates to additional undisclosed discovery identified during the recall deposition of Steve Merz during which he explained that three project numbers were assigned to the work it did for Plaintiffs' various projects. Cooper assigned internal project number 856 ("Project 856") to the work it performed on Plaintiffs' automobile sorting and shredding system (the "System"). (Merz Dep., (Vol. III) p. 865:19-23). "Project 946"was assigned for inspection work Cooper employee Dave Anderson performed at the AIMI facility. (*Id*. at 866:4-10). A third number, "Project 993", relates to the post fire investigation work Merz performed for Plaintiffs in support of Plaintiffs' insurance claims; payment for this work is at issue in Cooper's Counterclaims. (*Id*. at pp. 866:22-867:3.)

According to Plaintiffs, Merz admits that Cooper failed to preserve and/or search for documents and search for all employees' documents, apart from his, Mr. Anderson's and Mr. Ostapink's files. (Fidanza Cert. ¶23.) Specifically, Plaintiffs complain that Cooper's production fails to include are any documents from James Watson, who has email communications relevant to Project 856, among at least six other employees. (Merz Dep., (Vol. III) p. 816:19-823:25). In addition, there were no other files or emails

2

.

produced from any Cooper employees who worked on Project 856. The Project 993 information was stored on Merz' personal server and were, therefore, not searchable on Cooper's corporate server, resulting in only the Invoice for this work being disclosed during discovery. (*Id*. at 830:13-22). It became evident during Merz' recall deposition that additional discovery had not been disclosed. Cooper characterizes the evidence as falling into two categories: 1) email maintained by David Anderson and 2) video and photos taken by David Anderson. There is also a revised report following the December 2012 fire at the Plaintiffs' facility.

According to Cooper, the discovered email relates to electrical issues powering the facility and the equipment and therefore is not relevant to the issues in this litigation. (*See* Merz Cert.¶6b). Cooper characterizes the files containing photos and video of the AIMI plant as being relevant to the December 12 fire, which is not at issue in this case. In addition, Cooper claims that the photographs and video recordings are "somewhat" duplicative of previously disclosed evidence.

In terms of compliance with its discovery obligations, Cooper notes it learned that Merz identified undisclosed documents during his recall deposition, it disclosed that fact by way of letter to the Court and all parties dated February 27, 2021. Cooper confesses that it sent that letter before it reviewed the contents of the documents resulting in the disclosure containing more documents than Cooper initially advised.

Shortly thereafter, Cooper sent an email, dated March 2, 2021, to Plaintiffs' counsel to supplement its document production by providing a link to download the file "Project 946.zip." Cooper also agreed that the briefing schedule should be altered to

3

.

address the late disclosures and accommodate the need for additional time. (*See* King Cert., Ex. B). But Cooper's haste caused more confusion and frustration.

Cooper notes that its March 2, 2021 email attachment was incorrect. (*Id.*,¶10 and ¶11). Cooper states in its brief:

> Inadvertently attachment to the March 2, 2021 email was the March 30, 2020 letter serving Cooper's First Supplemental Production. The letter that should have been attached to the March 2, 2021 email is the March 2, 2021 letter attached at Exhibit C to the Certification of Counsel. (See Exhibit C to the Certification of Counsel ¶10 and ¶11). In that letter it states: "It was initially advised that these files consisted of a single video and revised report. However, there is a single folder that contains 14 videos. There is a folder containing 109 photos. There are 19 email[s]. There are 14 files associated with the report. I understand additional email will be forthcoming." (See Exhibit C to the Certification of Counsel ¶10 and ¶11). Unfortunately, this inadvertent oversight was not realized until the filing of this motion.

(Cooper Opposition Br., pp. 11-12).

Cooper argues that it endeavored to organize the files using bates numbering, and that process was delayed and ultimately botched. To mitigate the delay, Cooper utilized several tools to assist Plaintiffs' necessary review of the new information. (King Cert, Ex. D, ¶20). Cooper sets forth the following as the reasons

> Unfortunately, by telephone conference on or about April 15, 2021, counsel for Cooper was advised that NJL found a discrepancy in the instructions and functionality of the software. (See Certification of Counsel ¶33). NJL discovered that despite the claim that "any attachments to the email messages" would be included, that this, in fact, is not the case. (See Certification of Counsel ¶34). This resulted in the software failing to identify and produce certain email related to a single string of email. (See Certification of Counsel ¶35 - ¶40). To resolve the error, NJL supplied Counsel for Cooper with the missing emails and attachments within that thread which were not previously produced. In addition, NJL produced all of the email in unthreaded format. (See Certification of Counsel ¶41). Those documents have been provided to all parties. (See Certification of Counsel ¶42).

Cooper Opposition Br., pp.13-14.

.

Plaintiffs rightfully argue that the myriad of late evidentiary production and the folly of Cooper's attempts to mitigate its deficiencies is alarming. Cooper's inadequate method of maintaining and then searching for relevant documents, emails, and photographs has frustrated the progression of this case and is cause for concern. The volume of discovery in this case is staggering, and Plaintiffs have met the challenge of organizing the issues for the Court.  It is understandable that Plaintiffs are frustrated by the late production of thousands of documents, most of which have been produced after the filing of dispositive motions.

Since the filing of Plaintiffs' present motion, Cooper certifies that all the documents have been produced and that there is nothing outstanding.

**Standard of Review**

Under Federal Rule of Civil Procedure 26(a), except under certain circumstances not present here, a party must, without awaiting a discovery request, provide to the other parties:

> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information — along with the subjects of that information — that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
>
> (ii) a copy — or a description by category and location — of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.

FED. R. CIV. P. 26(a)(1)(A)(i)-(ii).

Additionally, [a] party who has made a disclosure under Rule 26(a) — or who has responded to an interrogatory, request for production, or request for admission — must

.

supplement or correct its disclosure or response … in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect. FED. R. CIV. P. 26(e)(1)(A).

Rule 37 addresses the ramifications of a party failing to satisfy Rule 26's requirements:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (3), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

FED. R. CIV. P. 37(c)(1).

Alternatively, the court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure; … may inform the jury of the party's failure; and … may impose other appropriate sanctions." *Id.* In determining whether to impose sanctions pursuant to Rule 37(c)(1), courts will consider: "(1) prejudice or surprise to the [opposing party]; (2) the ability of [the opposing party] to cure the prejudice; (3) the likelihood of disruption; and (4) the [non-disclosing party's] bad faith or unwillingness to comply." *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 104-05 (D.N.J. 2006) (citing *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3d Cir. 1995)).

Moreover, a court has the inherent power to determine whether a fraud has been committed upon the court. This requires a party to prove "clearly and convincingly" that the opposing party "has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Perna v. Elec. Data Sys. Corp.*, 916 F. Supp. 388,

.

397 (D.N.J. 1995) (quoting *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989)). In deciding to enforce its inherent powers, a district court should consider the same factors as it uses in applying Rule 37. *See Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994). The following factors must be considered prior to the court dismissing a case as a sanction for misconduct:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984).

**Discussion**

As noted above, Plaintiffs allege that Cooper's discovery violations warrant the desired sanctions: the failure to preserve evidence, the failure to timely disclose, the alleged cover-up once Cooper was exposed for failing to produce, the intentional withholding of evidence, and the failure to produce evidence from all the Cooper employees assigned to the relevant projects.

The Court will first consider the Rule 37 factors outlined above. To the extent that Plaintiffs were prejudiced by these issues, the Court finds that, by the Court's actions or reopening discovery and the Court's Opinion permitting Plaintiffs' experts, the prejudice has been substantially mitigated. The Court finds that, given the voluminous discovery and the fact that the previously undisclosed discovery has been completed, is adequate to alleviate any prejudice as to either party.

.

Additionally, the Court rejects the assertion that these issues were the result of Defendants' willful or bad faith conduct. Voluminous discovery was exchanged in this case, which included portions of the videos and photos in question and documents referring to those videos. While it is regrettable that evidence has been withheld and the Defendants supplied erroneous attachments, the Court, at this time will not make a finding that Defendants intentionally "buried" the relevant documents and evidence in this case. The Court will find, therefore, that Defendants' actions were not in bad faith.

In addition, the Court will hold that, under Rule 37, sanctions in the form of attorney's fees and costs are not appropriate in this instance. It follows that default judgment — a decidedly more extreme sanction — is also inappropriate here.

With respect to the *Poulis* factors, the Court finds that each of them, too, cut against imposing default judgment. Several of the *Poulis* factors follow the same discussion as above: Defendants personal responsibility is negligible here, as the Court finds that the non-disclosures were unintentional; any prejudice that resulted was already addressed by the Court; and Defendants did not act willfully or in bad faith. As to the remaining factors, while there is evidence of Defendants' history of dilatoriness, once Defendants learned of the non-disclosures, they turned it over promptly. The Court has already determined that other sanctions are not necessary, meaning that the fifth *Poulis* factor cuts against default judgment. And finally, the sixth factor — the meritoriousness of Defendants' claim or defense — is not relevant here given that Defendants' summary judgment motions have largely been denied. Examples of prejudice are "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the

8

.

opposing party." *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984). We have also said: "'prejudice' for the purpose of *Poulis* analysis does not mean 'irremediable harm,' the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003). Plaintiffs have a full record to prosecute at trial.

In sum, the various factors regarding the imposition of sanctions indicate that sanctions are not appropriate.

For the reasons set forth herein, IT IS on this 9th day of October 2024 hereby,

ORDERED that Plaintiffs' motion for default judgment and other sanctions against Defendant Cooper [Dkt. No. 308] is DENIED without prejudice.

Hon. Joseph H. Rodriguez, USDJ

9